WMG

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION


| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | SECOND |
| | ) | SUPERSEDING INDICTMENT |
| | ) | [Filed Under Seal] |
| | ) | |
| MICHAEL ANTHONY GRIFFIN, SR. | ) | 5:19-CR-346-1BO(4) |
| REGINA GRIFFIN | ) | 5:19-CR-346-2BO |
| ANGELA GRIFFIN | ) | 5:19-CR-346-3BO |
| CRESHUN ALEXANDRIA GRIFFIN | ) | 5:19-CR-346-4BO |
| SHARON ANNITA EDMOND | ) | 5:19-CR-346-5BO |
| KATINA GRIFFIN PERRY | ) | 5:19-CR-346-6BO |
| HARVEY GRIFFIN | ) | 5:19-CR-346-7BO |
| MELVIN GRIFFIN | ) | 5:19-CR-346-8BO |
| SHAWN ALLEN FARMER | ) | 5:19-CR-346-9BO |
| JASMINE MARIAH DAVIS | ) | 5:19-CR-346-10BO |
| TYRONE EDMONDS | ) | 5:19-CR-346-11BO |
| COSCINA MARIE BROOKS | ) | 5:19-CR-346-12BO |
| JASPER DEONTA GOODMAN | ) | 5:19-CR-346-13BO |

The Grand Jury charges that:

## INTRODUCTION

1.     MICHAEL ANTHONY GRIFFIN, SR. (hereinafter "MICHAEL
GRIFFIN") was an individual who resided and did business in the Eastern District
of North Carolina.   Operating from his home in Knightdale, and from a business
location in Raleigh, MICHAEL GRIFFIN accepted fees from clients for alleged credit
repair services.   In reality, MICHAEL GRIFFIN was creating fictitious credit
profiles and fraudulently altering client credit data through the use of fictitious police
reports.   MICHAEL GRIFFIN also created fraudulent documents in support of

fictitious credit profiles and credit applications.

2.    REGINA GRIFFIN was an individual who resided and did business in the Eastern District of North Carolina. REGINA GRIFFIN was the sister of Michael Griffin, and was a licensed North Carolina realtor. REGINA GRIFFIN worked, for a period of time, in an office location where MICHAEL GRIFFIN operated his credit repair business, and other business ventures including a company called NARD (Need A Record Deal).

3.    ANGELA GRIFFIN was an individual who resided and did business in the Eastern District of North Carolina.    ANGELA GRIFFIN was the wife of MICHAEL GRIFFIN.

4.    CRESHUN ALEXANDRIA GRIFFIN was an individual who resided and did business in the Eastern District of North Carolina. CRESHUN GRIFFIN was the daughter of MICHAEL GRIFFIN.    CRESHUN GRIFFIN worked, for a period of time, in an office location where MICHAEL GRIFFIN operated his credit repair business, and other business ventures including NARD.

5.    SHARON ANNITA EDMOND was an individual who resided and did business in the Eastern District of North Carolina. SHARON EDMOND was a sister of MICHAEL GRIFFIN. During times material, SHARON EDMOND operated Sage Ministries, Inc., also known as Sharon Edmond Ministries.

6.    KATINA GRIFFIN PERRY ("KATINA PERRY") was an individual who resided and did business in the Eastern District of North Carolina. KATINA PERRY a sister of MICHAEL GRIFFIN.

2

7.    HARVEY GRIFFIN was an individual who resided and did business in the Eastern District of North Carolina.   HARVEY GRIFFIN was a brother of MICHAEL GRIFFIN.

8.    MELVIN GRIFFIN was an individual who resided and did business in the Eastern District of North Carolina.   MELVIN GRIFFIN was a brother of MICHAEL GRIFFIN.

9.    SHAWN ALLEN FARMER was an individual who resided and did business in the Eastern District of North Carolina.   SHAWN FARMER was a business affiliate of MICHAEL GRIFFIN.

10.    JASMINE MARIAH DAVIS was an individual who resided and did business in the Eastern District of North Carolina.   JASMINE DAVIS was a business affiliate of MICHAEL GRIFFIN.

11.    TYRONE EDMONDS was an individual who resided and did business in the Eastern District of North Carolina.   TYRONE EDMONDS was a business affiliate of MICHAEL GRIFFIN.

12.    COSCINA MARIE BROOKS was an individual who resided and did business in the Eastern District of North Carolina.   COSCINA BROOKS was a business affiliate of MICHAEL GRIFFIN.

13.    JASPER DEONTA GOODMAN was an individual who resided and did business in the Eastern District of North Carolina.   JASPER GOODMAN was a business affiliate of MICHAEL GRIFFIN.

14.    Among other crimes described herein, MICHAEL GRIFFIN assisted

3

REGINA GRIFFIN, ANGELA GRIFFIN, CRESHUN GRIFFIN, HARVEY GRIFFIN, SHAWN ALLEN FARMER, JASMINE MARIAH DAVIS, TYRONE EDMONDS, COSCINA MARIE BROOKS, and JASPER DEONTA GOODMAN, in carrying out a fraud upon Synchrony Bank, which issued credit cards to Lowes home improvement customers. In this scheme, the participants created and used fraudulent identities to open credit accounts, which they used to purchase stored-value cards. The participants then failed to pay off the credit balances incurred on the fraudulent credit accounts, resulting in losses to Synchrony Bank. These crimes are the subject of Counts 4 through 14, below.

15. In addition to the foregoing, MICHAEL GRIFFIN assisted REGINA GRIFFIN, ANGELA GRIFFIN, CRESHUN GRIFFIN, SHARON ANNITA EDMOND, HARVEY GRIFFIN, MELVIN GRIFFIN, SHAWN ALLEN FARMER, and JASPER DEONTA GOODMAN, in obtaining fraudulent identities, bank statements, pay stubs, and other documents, for use in various frauds upon banks, lenders, merchants, and landlords, as detailed below. These crimes are the subject of Counts 15 through 29, below.

16. During and in relation to the offenses just described, the defendants also transferred, possessed, and used certain means of identification belonging to other individuals. These crimes are the subject of Counts 30 through 45, below.

17. Lastly, in connection with the federal grand jury investigation concerning MICHAEL GRIFFIN and alternate identities linked to MICAHEL GRIFFIN, REGINA GRIFFIN, ANGELA GRIFFIN, CRESHUN GRIFFIN, SHARON

4

EDMOND, and MELVIN GRIFFIN, each provided false testimony concerning their knowledge of MICHAEL GRIFFIN's fraudulent activities, or facts pertaining to the same, as detailed below. These crimes are the subject of Counts 46 through 50, below.

## COUNTS 1 – 3

18. Companies known as Credit Reporting Agencies (CRA's) are in the business of assembling and evaluating consumer credit information for the purpose of providing reports about the credit-worthiness of consumers to third parties. These reports are commonly known as "credit reports." CRAs include such companies as Equifax, Experian, and Transunion.

19. CRAs sell credit reports to businesses (referred to herein as "end-users") that are in need of information concerning the credit-worthiness of consumers. Such businesses include, among others, banks, lenders, merchants, and landlords. Credit reports assist businesses to make decisions concerning whether, and on what terms, to do business with the potential customer that is the subject of a particular credit report.

20. Credit reports typically contain a credit score, which is derived from a statistical calculation that quantifies the credit risk posed by a prospective customer, who is identified by such factors as the customer's name and Social Security Number. The credit score of a particular customer is influenced by many factors, including the consumer's payment history, utilization of credit, balances, available credit limit, and length of credit history. Credit scoring is widely used by end-users to evaluate

5

applications for credit, identify prospective borrowers, and manage existing credit accounts.

21.     Credit reports are derived from information provided to CRAs by entities referred to herein as "furnishers." Furnishers are entities that, during the course of their business, acquire information concerning the credit and payment histories of their customers, who are identified by, among other things, their name and Credit Profile Number (CPN). CRAs utilize the consumer's Social Security Number as the consumer's CPN. Common furnishers are credit card issuers, automobile lenders, department stores, utilities, insurers, and collection agencies. Many furnishers are also end-users of credit reports.

22.     Lines of credit, or credit accounts, are the most common item appearing on credit reports. CRAs commonly refer to these as "tradelines." The existence of tradelines, and the timeliness of payments on tradelines, which are linked to a specific individual through their Social Security Number, can impact the ultimate credit score of an individual. In other words, the existence of positive tradelines, or the removal of negative tradelines, on a consumer's credit report can impact that individual's ability to obtain credit, goods, and services.

23.     Consumers have the ability to dispute the completeness or accuracy of information contained in that consumer's file at a CRA. For example, a consumer could contact Equifax to provide notification that the consumer did not, in fact, fail to make timely payments on a tradeline, or that the consumer did not open a particular tradeline.

6

24.     CRAs were required to block credit information for a consumer that the consumer alleged was the result of identity theft.   To cause the CRAs to block information arising from an alleged identity theft, the consumer was required to present to the CRA: (1) proof of his or her identity, (2) a copy of an identity theft report (such as a police report), and (3) a statement claiming that the specified tradelines or other information at issue did not relate to any transaction by the consumer.   Absent proof that the alleged identity theft was unfounded, the CRAs were required to block the disputed information within 4 days of receiving the report of identity theft.

25.     Because of the importance of credit histories and credit scores to lending and other business decisions, the integrity and availability of accurate data and information maintained by CRAs was important to furnishers, end-users, and CRAs. The fraudulent inclusion of positive credit information, such as timely payments by a consumer on a tradeline, had the ability to falsely boost the appearance of a consumer's credit-worthiness and credit score.   Likewise, the fraudulent removal of negative tradelines from a consumer's credit history through, for example, a false allegation that the tradeline resulted from identity theft, also had the ability to falsely boost the appearance of a consumer's credit-worthiness and credit score.

## THE SCHEME

26.     Beginning at a time unknown, but no later than November of 2012, and continuing to a time unknown, but no earlier than July of 2019, within the Eastern District of North Carolina and elsewhere, the defendant, MICHAEL ANTHONY GRIFFIN, SR., aiding and abetting, devised and intended to devise a scheme to

7

defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

MANNER AND MEANS

27. MICHAEL GRIFFIN carried on an informal business operation which purported to "repair" the credit of individuals. In fact, MICHAEL GRIFFIN engaged in a scheme to defraud credit bureaus, end-users of credit information, and in some instances, MICHAEL GRIFFIN's own clients.

28. To carry out the scheme, MICHAEL GRIFFIN informed potential clients that he could boost their credit scores and, in some instances, provide them with an alternative CPN to conduct credit transactions. MICHAEL GRIFFIN typically charged a fee of several thousand dollars for these services. MICHAEL GRIFFIN accepted payment for his services in cash, via check and via money order.

29. MICHAEL GRIFFIN filed and caused to be filed fraudulent disputes with the CRAs, alleging that a particular negative trade line on the client's credit report was the result of the theft of the client's identity. To convince the credit reporting agencies that his clients' identities had been compromised, MICHAEL GRIFFIN drafted and caused to be drafted false police reports which purported to reflect that the client had contacted the police to report the loss or theft of their identity. MICHAEL GRIFFIN then transmitted and caused to be transmitted the false dispute paperwork, including the fraudulent police reports, to CRAs via United States Mail or interstate fax transmissions.

8

30.     In fact, however, MICHAEL GRIFFIN's clients did not file the police reports that MICHAEL GRIFFIN sent to the CRAs alleging identity theft.    In reality, the police reports sent to the CRAs were fabricated.

31.     The CRAs received and relied upon the fraudulent dispute paperwork created and transmitted by MICHAEL GRIFFIN, resulting in the removal of negative tradelines from the client credit profiles.

32.     In some instances, MICHAEL GRIFFIN also offered clients, in exchange for money, the opportunity to utilize an alternative credit profile to conduct credit transactions.    In reality, the credit profiles were fraudulently created by Griffin so that Griffin and others could engage in credit transactions without utilizing their true identity and revealing their true credit history.

## USE OF THE WIRES

33.     On or about each of the dates set forth below, in the Eastern District of North Carolina and elsewhere, the defendant, MICHAEL ANTHONY GRIFFIN, SR., for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count:

| COUNT | DATE | WIRE |
|-------|------|------|
| 1 | 2/1/2017 | Interstate wire transmission of from North Carolina to Equifax in Atlanta, Georgia, containing fraudulent Raleigh Police Department Report P17-005942 claiming that K.B. was the victim of identity theft. |
| 2 | 5/25/2017 | Interstate wire transmission of from North Carolina to Equifax in Atlanta, Georgia, containing fraudulent Wilson Police Department Report P17-345614 claiming that T.D. |

9

| | | was the victim of identity theft. |
|---|---|---|
| 3 | 6/15/2017 | Interstate wire transmission of from North Carolina to Equifax in Atlanta, Georgia, containing fraudulent Raleigh Police Department Report P17-005942 claiming that K.L. was the victim of identity theft. |

Each entry in the foregoing table constituting a separate violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 4

### The Conspiracy

34.     Beginning at a time unknown, but no later than March of 2017, and continuing to a time unknown, but no earlier than December 31, 2018, within the Eastern District of North Carolina and elsewhere, the defendants MICHAEL ANTHONY GRIFFIN, SR. and REGINA GRIFFIN, did knowingly combine, conspire, confederate, and agree with each other and others known and unknown to the grand jury, to commit an offense against the United States, to wit, to knowingly execute and attempt to execute a scheme to obtain any of the moneys, funds, credits, assets, and other property owned by and under the custody and control of a financial institution, to wit, Synchrony Bank, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

### Purpose of the Conspiracy

35.     It was the purpose of the conspiracy for the conspirators to acquire credit and monies in the names of credit profiles that did not belong to them, and thereby

10

avoid responsibility for the debts.

Manner and Means

36.    Paragraphs 1 through 25 are realleged and incorporated into this Count.

37.    MICHAEL GRIFFIN, SR. conspired with REGINA GRIFFIN, and various other individuals known and unknown to the grand jury, to create and use, fraudulent credit profiles to obtain credit cards from Lowes.

38.    Lowes is a national home improvement chain store that sold, among other things, various gift cards and stored-value cards.  Lowes costumers had the ability to apply to Synchrony Bank for a Lowes credit card account.  Synchrony Bank was an institution whose deposits were insured by the Federal Deposit Insurance Corporation.

39.    To create the fraudulent credit profiles, MICHAEL GRIFFIN, SR. would acquire a Social Security Number belonging to another individual, who often resided in another state.  In some instances, the Social Security Numbers belonged to minors.

40.    MICHAEL GRIFFIN then collaborated with REGINA GRIFFIN, as well as other conspirators known and unknown to the grand jury, to create fictitious identities utilizing, among other things, Social Security Numbers that did not belong to the conspirators.  Typically, the conspirators utilized a "mail drop," or mailbox that was not directly linked to the conspirators, as the mailing address for the fictitious identity.  In some instances, the conspirators also created a new email address for the fictitious identity.  Additionally, the conspirators frequently utilized

11

pre-paid phone accounts as the phone number to be attributed to the fictitious identity. In some, but not all instances, the conspirators used their name, or that of a family member, for the fictitious identity.

41. After creating the fictitious identity, a member of the conspiracy opened a Lowes credit card, through Synchrony Bank. When applying for the credit card, the conspirators utilized the fictitious identity rather than their true identity and Social Security Number.

42. After being approved by Synchrony Bank for a Lowes credit card, a member of the conspiracy utilized the card to purchase, among other things a large quantity of stored-value cards. Stored-value cards are a form of debit account which is not linked to a specific individual. The holder of the stored-value card can use the card as a cash equivalent to make purchases of goods and services from virtually any business that accepts VISA or Mastercard as a form of payment.

43. After purchasing a large number of stored-value cards and other items using the fraudulently acquired credit card from Synchrony Bank, the conspirators then failed to pay the balances on the credit accounts.

44. Since the credit balances were linked to Social Security Numbers (SSNs) that did not belong to the conspirators, as well as to fictitious addresses and temporary email accounts and phone numbers, the conspirators avoided responsibility for the debts incurred by Synchrony Bank.

45. The conspirators failed to pay the balances that they incurred on the fraudulent credit accounts, resulting in losses to Synchrony Bank.

12

<u>Overt Acts</u>

46.     In furtherance of the conspiracy, and to effect the objects thereof, there were committed in the Eastern District of North Carolina and elsewhere various overt acts, including, but not limited to, a conspirator's creation, and a conspirator's use of the following fictitious identities, as described in the table below, within the date ranges identified below:

| Dates | Name | Address | SSN | Birthdate | Email |
|---|---|---|---|---|---|
| 5/6/2017 to 6/30/2018 | Coscina Brooks | 5316 Pronghorn Lane | *2679 | * / * / 1972 | Cbrooks @yahoo.com |
| 7/22/2017 to 7/31/2018 | Tyrone Edmonds | 3835 Guess Road, Apt. 204, Durham, NC | *9843 | * / * / 1972 | Tyed72 @mail.com |
| 8/17/2017 to 5/31/2018 | Coscina Brooks | 5101 Sleepy Willow Way, Apt. 202, Raleigh, NC | *2890 | * / * / 1970 | Prettybrooks @gmail.com |
| 9/12/2017 to 1/8/2018 | Patricia Griffin | 4501 New Bern Avenue, Suite 130-207, Raleigh | *1872 | */ */ 1980 | Patriciagriffin80 @gmail.com |
| 9/12/2017 to 1/8/2018 | Regina Griffin | 6611 Roundstone Drive, Apt. 203, Raleigh, NC | *5689 | * / * / 1972 | Griffinregina71 @gmail.com |
| 10/6/2017 to 12/31/2018 | Shawn Farmer | 3138 Renaissance Park Place, Cary, NC | *7282 | * / * / 1969 | Sfarmerlips @gmail.com |
| 10/11/2017 to 12/31/2017 | Harvey Griffin | 6001 Shanda Dr., Apt. A, Raleigh, NC | *2015 | * / * / 1974 | Hgriffin999 @yahoo.com |
| 10/11/2017 to 1/31/2018 | Jasmine Davis | 824 East Cameo Lane, Knightdale, NC | *3097 | * / * / 1992 | Jasminedavis @yahoo.com |
| 11/21/2017 to 12/21/2017 | Angela Griffin | 4712 Matt Drive, Unit C, Raleigh, NC | *8004 | * / * / 1970 | Griffang1970 @mail.com |
| 2/20/2018 to | Michael Jones | 2315 Oakridge Boulevard, | *2947 | * / * / 1982 | Mike.Jones82 @mail.com |

13

| 11/31/2018 | | Durham, NC | | | |
|---|---|---|---|---|---|

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 5-14

47.    Beginning at a time unknown, but no later than March of 2017, and continuing to a time unknown, but no earlier than December 31, 2018, within the Eastern District of North Carolina and elsewhere, the defendants identified in the table below, aiding and abetting each other, knowingly executed and attempted to execute a scheme to obtain any of the moneys, funds, credits, assets, and other property owned by and under the custody and control of a financial institution, to wit, Synchrony Bank, by means of materially false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

48.    Paragraphs 1 through 25, and 37 through 46, are realleged and incorporated herein.

49.    The defendants identified in each row of the table below caused credit applications to be filed with Synchrony Bank, a Financial Institution, as that term is defined in Title 18, United States Code, Section 20.    In causing said applications to be filed, the defendants utilized the fictitious identity profiles (consisting of, among other things, names, dates of birth (DOB), and Social Security Numbers (SSNs)) as detailed in each row of the table below.

50.    In reliance upon the fraudulent information submitted, Synchrony Bank

14

extended credit accounts to the fictitious identities.

51. The defendants in each row of the table below then used, and caused to be used, the fraudulently acquired credit accounts to convert the credit into, among other things, stored value cards.

52. Ultimately, the defendants identified in each row of the table below defaulted on the credit accounts acquired in the names of the fictitious identities. Since the defendants caused the fictitious identities to be used on the application, however, the defendants avoid responsibility for the debts incurred on the credit accounts.

EXECUTION OF THE SCHEME

53. Beginning and ending on exact dates unknown, but no later than, nor earlier than the dates set forth in each row of the table below, within the Eastern District of North Carolina and elsewhere, the Defendants identified in each row of the table below, aiding and abetting each other, executed and attempted to execute the scheme and artifice described above, by creating a fictitious identity, causing that identity to be used to open the Synchrony Bank credit accounts identified in each row below, and causing the credit accounts to be used to purchase, among other things, stored value cards:

| COUN | DEFENDANTS | DATES | FICTITIOUS IDENTITY | CREDIT ACCOUNT |
|---|---|---|---|---|

15

| T | | | | |
|---|---|---|---|---|
| 5 | MICHAEL GRIFFIN, SR.; COSCINA MARIE BROOKS | 5/6/2017 to 6/30/2018 | Coscina Brooks SSN: *2679 DOB: * / * / 1972 | *8601 |
| 6 | MICHAEL GRIFFIN, SR.; TYRONE EDMONDS | 7/22/2017 to 7/31/2018 | Tyrone Edmonds SSN: *9843 DOB: * / * / 1974 | *4555 |
| 7 | MICHAEL GRIFFIN, SR.; COSCINA MARIE BROOKS | 8/17/2017 to 5/31/2018 | Coscina Brooks SSN: *2890 DOB: * / * / 1970 | *3636 |
| 8 | MICHAEL GRIFFIN, SR.; REGINA GRIFFIN | 9/12/2017 to 1/8/2018 | Patricia Griffin SSN: *1872 DOB: */ */ 1980 | *0259 |
| 9 | MICHAEL GRIFFIN, SR.; REGINA GRIFFIN | 9/12/2017 to 1/8/2018 | Regina Griffin SSN: *5689 DOB: * / * / 1971 | *3570 |
| 10 | MICHAEL GRIFFIN, SR.; SHAWN ALLEN FARMER | 10/6/2017 to 12/31/2018 | Shawn Farmer SSN: *7282 DOB: * / * / 1969 | *4090 |
| 11 | MICHAEL GRIFFIN, SR.; HARVEY GRIFFIN | 10/11/2017 to 12/31/2017 | Harvey Griffin SSN: *2015 DOB: * / * / 1974 | *1576 |
| 12 | MICHAEL GRIFFIN, SR.; JASMINE MARIAH DAVIS | 10/11/2017 to 1/31/2018 | Jasmine Davis SSN: *3097 DOB: * / * / 1992 | *3972 |
| 13 | MICHAEL GRIFFIN, SR.; ANGELA GRIFFIN; CRESHUN ALEXANDRIA GRIFFIN | 11/21/2017 to 12/21/2017 | Angela Griffin SSN: *8004 DOB: * / * / 1970 | *3895 |
| 14 | MICHAEL GRIFFIN, SR.; JASPER DEONTA GOODMAN | 2/20/2018 to 11/31/2018 | Michael Jones SSN: *2947 DOB: * / * / 1982 | *9026 |

Each of the transactions identified in the foregoing table constituting a separate

violation of Title 18, United States Code, Sections 1344 and 2.

16

54.     Beginning at a time unknown, but no later than March of 2016, and continuing to a time unknown, but no earlier than September 2019, within the Eastern District of North Carolina and elsewhere, the defendants identified in the table below, aiding and abetting each other, knowingly executed and attempted to execute a scheme to obtain any of the moneys, funds, credits, assets, and other property owned by and under the custody and control of a financial institutions identified in each row of the table below, by means of materially false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

55.     Paragraphs 1 through 25 are realleged and incorporated herein.

56.     MICHAEL GRIFFIN, SR. assisted various individuals, identified in each row of the table below, to seek credit from various financial institutions on the basis of fraudulent information and documents, as detailed in each row of the table below.

57.     In reliance upon the fraudulent information submitted, the various financial institutions extended credit accounts to the applicants.

58.     The credit accounts were then utilized to fraudulently acquire various goods and services.

## EXECUTION OF THE SCHEME

59.     Between the dates set forth in the table below, each entry constituting

17

a separate count of this Second Superseding Indictment, within the Eastern District of North Carolina and elsewhere, the Defendants identified in each row of the table below, aiding and abetting each other, executed and attempted to execute the scheme and artifice described above, by creating and then using the fraudulent information identified in each row of the table below, to open the credit accounts at the financial institutions (as defined in 18 U.S.C. § 20) identified in each row below:

| COUNT | DEFENDANTS | DATES | FRAUDULENT INFORMATION | FINANCIAL INSTITUTION AND CREDIT ACCOUNT |
|---|---|---|---|---|
| 15 | MICHAEL GRIFFIN, SR.; ANGELA GRIFFIN | 10/8/2017 to 6/30/2018 | Applicant: Angela Griffin SSN: 6352 DOB: 12/22/1968 | Discover Bank Account: *7304 |
| 16 | MICHAEL GRIFFIN, SR.; CRESHUN ALEXANDRIA GRIFFIN | 8/11/2017 to 12/31/2018 | Applicant: Creshun Griffin SSN: *8563 | Capital One Account: *1249 |
| 17 | MICHAEL GRIFFIN, SR.; HARVEY GRIFFIN | 11/1/2016 to 9/30/2019 | Paystub for Harvey Griffin reflecting that Harvey Griffin made $4,068 every other week at Transamerica, 4333 Edgewood Road NE, Cedar Rapids, IA 52499 | State Employee's Credit Union Account: *8418-01 |
| 18 | MICHAEL GRIFFIN, SR.; MELVIN GRIFFIN | 10/5/2017 to 8/31/2018 | Applicant: Melvin Griffin SSN: *1340 DOB: 8/5/1975 Phone: (984)365-2546 | Discover Bank Account: *0159 |
| 19 | MICHAEL GRIFFIN, SR.; JASPER DEONTA GOODMAN | 9/25/2017 to 3/28/2019 | Applicant: Jasper Goodman DOB: 5/19/1975 SSN: *1367 | Ally Bank Account: *71849 |
| 20 | MICHAEL GRIFFIN, SR.; | 9/25//2017 | Applicant: Jasper | Capital One |

18

| JASPER DEONTA GOODMAN | to 8/31/2018 | Goodman SSN: *1367 DOB: 5/19/1975 | Account: *4529 |

Each of the transactions identified in the foregoing table constituting a separate violation of Title 18, United States Code, Sections 1344 and 2.

## COUNTS 21-28

### THE SCHEME

60.    Beginning at a time unknown, but no later than March of 2016 and continuing to March of 2020, in the Eastern District of North Carolina and elsewhere, the defendants listed in each row of the table below, aiding and abetting each other, devised and intended to devise a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

### MANNER AND MEANS

61.    Introductory paragraphs 1 through 25 are realleged and incorporated herein.   MICHAEL GRIFFIN, SR., assisted various individuals to obtain either fictitious identities, or fictitious documents, that enabled them to obtain credit, goods, services, leaseholds, and other things of value.

62.    With respect to the creation of fictitious identities, MICHAEL GRIFFIN, SR. assisted individuals to create a fictitious identity, consisting of, at a minimum, an alternate Social Security Number (SSN) and Date of Birth (DOB).   This fictitious identity could then be used, in lieu of the individual's true identity, to apply for credit, goods, leaseholds, and other things of value.   The fictitious identity also allowed the

19

scheme participants to avoid responsibility for the debts in the event of default. The fictitious identities utilized are described in the table below.

63. With respect to creation of fictitious documents, MICHAEL GRIFFIN, SR. maintained various document templates that allowed him and others to fabricate documents to use when applying for, among other things, credit, loans, goods, and leaseholds. In general, these fabricated documents made it appear that the applicants supplying the documents were more credit-worthy than they were in fact. The fictitious documents utilized are described in the table below.

USE OF THE WIRES

64. On or about each of the dates set forth below, in the Eastern District of North Carolina and elsewhere, the defendant(s) listed in each row of the table below, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce certain signals and sounds, described in each row below, in connection with the transaction identified in each row below:

| COUNT | DEFENDANT(S) | DATE | WIRE | TRANSACTION |
|---|---|---|---|---|
| 21 | MICHAEL GRIFFIN, SR. | 10/24/2017 | Electronic Credit Application transmitted from North Carolina to Route One, LLC in Michigan | Attempted purchase of Hyundai Genesis from Johnson Hyundai of Cary using SSN *9281 and fraudulent Social Security Card bearing the same |

20

| | | | | number |
|----|---|---|---|---|
| 22 | REGINA GRIFFIN | 5/9/2017 | Electronic credit verification from Amrent in Pennsylvania to Wilson Property Management in North Carolina | Lease of 9912 Cleaver Court, Raleigh, NC, using SSN ending in *1871 that did not belong to her, and fraudulent payroll information from NARD. |
| 23 | MICHAEL ANTHONY GRIFFIN, SR.; CRESHUN ALEXANDRIA GRIFFIN | 7/15/2016 to 8/31/2017 | Electronic credit verification request from Lexington on the Green Apartments in Raleigh, North Carolina to Corelogic servers located outside of North Carolina | Lease of 4909 N. New Hope, Raleigh, NC, using SSN ending in *0831 that did not belong to her, a date of birth that did not belong to her, and fraudulent paystubs from NARD. |
| 24 | MICHAEL ANTOHONY GRIFFIN, SR.; CRESHUN ALEXANDRIA GRIFFIN | 8/21/2017 | Tenant application form transmitted via Docusign, Inc., from North Carolina to Docusign, Inc. servers located outside of North Carolina | Lease of 4712 Matt Drive, Apt. C, Raleigh, NC, using SSN ending in *0831 that did not belong to her. |
| 25 | MICHAEL ANTHONY GRIFFIN, SR. SHARON ANNITA EDMOND | 4/16/2018 | Wire Deposit of $22,100 from Strategic Funding Partners, doing business as Merchant Cash Group in Florida, to Sage Ministries, Inc. in North Carolina. | Application for sale of future receipts of Sage Ministries, Inc., using a SSN ending in *3022 that did not belong to her, and a fake driver's license |
| 26 | SHARON ANNITA EDMOND | 6/12/2018 | Wire Deposit of $14,104 from Strategic Funding Partners, doing business as Merchant Cash Group in Florida, to Sage Ministries, Inc. in North Carolina. | Application for sale of future receipts of Sage Ministries, Inc., using a SSN ending in *3022 that did not belong to her |
| 27 | MICHAEL ANTHONY GRIFFIN, SR.; KATINA GRIFFIN PERRY | 8/21/2017 through 9/19/2017 | Credit Application transmitted via interstate wires from Fred Anderson Kia of Raleigh in North Carolina to Kia Motor Finance located outside of North Carolina | Application for credit with Kia Motor Finance to purchase a 2017 Kia Forte using a SSN ending in *0078 that did not belong to her |
| 28 | KATINA GRIFFIN PERRY | 3/11/2016 | Electronic resident | Lease of 9250 |

21

| | | | | screening application via YARDI, from Grayco Properties in North Carolina to Experian in California. | Bruckhaus Street, Apt. 211 Raleigh, NC, using a SSN ending in *0078 that did not belong to her, and fraudulent payroll information from NARD. |
|---|---|---|---|---|---|

Each entry in the foregoing table constituting a separate violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 29

65. Introductory paragraphs 1 through 25 are realleged and incorporated herein.

66. Between in or about February 11, 2019, and March 19, 2019, REGINA GRIFFIN applied for and ultimately obtained a loan with Alcova Mortgage LLC for the purchase of a property at 9211 Calabria Drive, #102, Raleigh, NC 27617.

67. Among other things, the loan application required REGINA GRIFFIN to provide the amount of her assets. REGINA GRIFFIN only listed one asset at the time that she applied for the loan, which was cash in a Wells Fargo bank account ending in *3498. REGINA GRIFFIN represented to the bank that the cash balance was higher than it was in fact.

68. In connection with the aforementioned mortgage application, REGINA GRIFFIN caused to be fabricated several Wells Fargo bank statements and printouts for account *3498 that showed a higher available cash balance than actually existed in the account.

22

69.     REGINA GRIFFIN submitted and caused to be submitted the fabricated bank statements to Alcova Mortgage in support of her loan application.

70.     Therefore, between February 11, 2019, and March 19, 2019, in the Eastern District of North Carolina and elsewhere, the defendant REGINA GRIFFIN, knowingly made a false statement for the purpose of influencing the action of Alcova Mortgage LLC, a mortgage lending business, in connection with a loan, in that the defendant falsified the cash balance in her account ending in *3498, when in truth and in fact, as the defendant well knew the balance was falsely inflated, and the bank statements supplied in support of the same were fabricated.

All in violation of Title 18, United States Code, Section 1014.

## COUNTS 30-45

71.     Paragraphs 1 through 64 are realleged and incorporated herein.

72.     On or about the dates listed in each row of the table below, in the Eastern District of North Carolina and elsewhere, the defendants identified in each row of the table below, aiding and abetting each other, did knowingly transfer, possess, and use, without lawful authority, certain means of identification described in each row of the table below, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c) which is identified in each row of the table below under the column entitled "related felony," knowing that said means of identification belonged to another actual person:

23

| C O U N T | DEFENDANT(S) | Date(s) | MEANS OF IDENTIFICATION | RELATED FELONY |
|---|---|---|---|---|
| 30 | MICHAEL ANTHONY GRIFFIN, SR. | 5/25/2017 | Name, address, and date of birth of T.D. | Count 2 Wire Fraud 18 U.S.C. § 1343 |
| 31 | MICHAEL ANTHONY GRIFFIN, SR. | 10/23/2017 through 11/6/2017 | Social Security Number ending in *9281 | Count 21, Wire Fraud 18 U.S.C. § 1343 |
| 32 | MICHAEL ANTHONY GRIFFIN,SR.; REGINA GRIFFIN | 9/12/2017 to 1/8/2018 | Social Security Number ending in *1872 | Count 8 Bank Fraud 18 U.S.C. § 1344 |
| 33 | MICHAEL ANTHONY GRIFFIN,SR.; REGINA GRIFFIN | 9/12/2017 to 1/8/2018 | Social Security Number ending in *5689 | Count 9 Bank Fraud 18 U.S.C. § 1344 |
| 34 | MICHAEL GRIFFIN, SR.; COSCINA MARIE BROOKS | 5/6/2017 to 6/30/2018 | Social Security Number ending in *2679 | Count 5 Bank Fraud, 18 U.S.C. § 1344 |
| 35 | MICHAEL GRIFFIN, SR.; TYRONE EDMONDS | 7/22/2017 to 7/31/2018 | Social Security Number ending in *9843 | Count 6 Bank Fraud 18 U.S.C. § 1344 |
| 36 | MICHAEL GRIFFIN, SR.; SHAWN ALLEN FARMER | 10/6/2017 to 12/31/2018 | Social Security Number ending in *7282 | Count 10 Bank Fraud 18 U.S.C. § 1344 |
| 37 | MICHAEL GRIFFIN, SR.; HARVEY GRIFFIN | 10/11/2017 to 12/31/2017 | Social Security Number ending in *2015 | Count 11 Bank Fraud 18 U.S.C. § 1344 |
| 38 | MICHAEL GRIFFIN, SR.; JASMINE MARIAH DAVIS | 10/11/2017 to 1/31/2018 | Social Security Number ending in *3097 | Count 12 Bank Fraud 18 U.S.C. § 1344 |
| 39 | MICHAEL GRIFFIN, SR.; CRESHUN | 8/11/2017 to 12/31/2018 | Social Security Number ending in *8563 | Count 16 Bank Fraud 18 U.S.C. § 1344 |

24

| | | | | |
|---|---|---|---|---|
| | ALEXANDRIA GRIFFIN | | | |
| 40 | MICHAEL GRIFFIN, SR.; ANGELA GRIFFIN; | 11/21/2017 to 2/24/2018 | Social Security Number ending in *8004 | Count 13 Bank Fraud 18 U.S.C. § 1344 |
| 41 | MICHAEL GRIFFIN, SR.; JASPER DEONTA GOODMAN | 9/25//2017 to 8/31/2018 | Social Security Number ending in *1367 | Count 20 Bank Fraud 18 U.S.C. § 1344 |
| 42 | MICHAEL GRIFFIN, SR.; MELVIN GRIFFIN | 10/5/2017 to 8/31/2018 | Social Security Number ending in *1340 | Count 18 Bank Fraud 18 U.S.C. § 1344 |
| 43 | MICHAEL GRIFFIN, SR.; SHARON ANNITA EDMOND | 10/17/2017 to 6/12/2018 | Social Security Number ending in *3022 | Count 25 Wire Fraud 18 U.S.C. § 1343 |
| 44 | MICHAEL GRIFFIN, SR.; KATINA GRIFFIN PERRY | 8/21/2017 to 9/19/2017 | Social Security Number ending in *0078 | Count 27 Wire Fraud 18 U.S.C. § 1343 |
| 45 | MICHAEL GRIFFIN, SR.; KATINA GRIFFIN PERRY | 3/11/2016 | Social Security Number ending in *0078 | Count 28 Wire Fraud 18 U.S.C. § 1343 |

Each row of the foregoing table constituting a separate violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## COUNT 46

73.     Introductory paragraphs 1 through 72 are incorporated herein as though fully set forth in this count.

74.     On or about August 22, 2019, in the Eastern District of North Carolina, REGINA GRIFFIN, while under oath and testifying in a proceeding before a Grand Jury of the United States in the Eastern District of North Carolina, did knowingly

25

make a false material declaration concerning her knowledge of, and involvement with MICHAEL GRIFFIN's credit repair business.

75.    At the time and place aforesaid the Grand Jury was conducting an investigation into the manner and means by which MICHAEL GRIFFIN conducted credit repair work for clients.    Various emails reflected that REGINA GRIFFIN carried out various tasks associated with credit repair on behalf of MICHAEL GRIFFIN.    REGINA GRIFFIN was shown these and other documents, and asked questions concerning her knowledge of credit repair and monitoring activities.    In response, REGINA GRIFFIN represented that she had knowledge of such matters.

76.    At the time and place alleged, REGINA GRIFFIN, appearing as a witness under oath at a proceeding before the Grand Jury knowingly made the following declarations in response to questions with respect to the material matter alleged in the preceding paragraph.

77.    After being shown an exhibit displaying a July 24, 2018 email from "regina@needarecorddeal.com" to "mikegriffin@needarecorddeal.com", bearing the subject line "credit clients", and stating the following:

> *I only pulled Equifax:*
>
> *LAWRENCE JONES:   no changes*
> *JASPER   GOODMAN:   1   inquiry   left   AND   1   negative account(Public Service of N) on EF*
> *DONNELL JOHNSON: no inquiries removed yet and 1 negative account(SYNCB/CARE   CREDIT)   removed   but   1   negative account(Tidewater Finance) was reported on 7/18/18*
> *JOHN HARRIS: only 1 inquiry left and 1 acccount(KOHLS) on file was removed on EF*

26

> *SHARON EDMOND: inquiry removed....no accounts have been*
> *removed and 2 more has come on account*
> *CLIFTON ELLIOTT: no changes on anything*
> *TERCEL WALKER: no changes on anything*
>
> *I am resubmitting everything for the ones that need it.*
>
> *Thanks,*
> *Regina Griffin*

REGINA GRIFFIN then stated:

> *Okay. Now, honestly, I've never seen this. Now, I don't know*
> *what's going on with this, but I didn't do that. And that's the*
> *truth.*

78. Referring to the content of the same exhibit, REGINA GRIFFIN was

then asked the following question and gave the following answer:

> *Q:    Did you do any credit work like this when you were at*
> *NARD?*
>
> *A:    I've never in my life done credit and I don't even know how*
> *to do credit.*

79. The aforesaid testimony of REGINA GRIFFIN, as she then and there

well knew and believed, was false, in that REGINA GRIFFIN had transmitted

numerous email messages to, and received emails from, MICHAEL GRIFFIN,

concerning MICHAEL GRIFFIN'S credit repair and monitoring activities, and

further, in that REGINA GRIFFIN herself had police reports and affidavits prepared

to attempt to improve her own credit.

All in violation of Title 18, United States Code, Section 1623.

27

## COUNT 47

80.    Introductory paragraphs 1 through 72 are incorporated herein as though fully set forth in this count.

81.    On or about August 22, 2019, in the Eastern District of North Carolina, ANGELA GRIFFIN, while under oath and testifying in a proceeding before a Grand Jury of the United States in the Eastern District of North Carolina, did knowingly make a false material declaration concerning her knowledge of CPNs or alternative credit profiles that existed in her name.

82.    At the time and place aforesaid the Grand Jury was conducting, among other things, the nature and extent of MICHAEL GRIFFIN's involvement in creating alternate identities for use in credit transactions.   Various documents reflected that alternate identities had been created in the name of ANGELA GRIFFIN, and that these alternate identities had been used to open credit accounts.   ANGELA GRIFFIN was shown these and other documents, and asked questions concerning her knowledge of such matters.

83.    At the time and place alleged, ANGELA GRIFFIN, appearing as a witness under oath at a proceeding before the Grand Jury knowingly made the following declarations in response to questions with respect to the material matter alleged in the preceding paragraph.

84.    After being shown documents reflecting the existence of an Angela Griffin, allegedly residing at 4712 Matt Drive, Apartment C, in Raleigh, with a SSN

28

ending in *8004, ANGELA GRIFFIN was asked the following question and gave the following answer:

> Q: *Do you know why there would be what's called a CPN or alternative credit profile in your name?*
>
> A: *I don't.*
>
> Q: *You don't know?*
>
> A: *I don't know.*

85. ANGELA GRIFFIN was also shown documents concerning an alternative identity named Angela Griffin that allegedly lived at 9912 Cleaver Court in Raleigh, NC, and allegedly possessed a SSN ending in *6352. After confirming that her SSN did not end in *6352, and that she had not opened any credit accounts using SSN *6352, ANGELA GRIFFIN was then asked the following question and gave the following answer:

> Q: *Do you know of anyone doing that in your name?*
>
> A: *Not that I'm aware of.*

86. The aforesaid testimony of ANGELA GRIFFIN, as she then and there well knew and believed, was false, in that ANGELA GRIFFIN and MICHAEL GRIFFIN communicated concerning both of the aforementioned alternate identities using ANGELA GRIFFIN's name, but bearing a different SSN, different date of birth, and an address belonging to a family member.

All in violation of Title 18, United States Code, Section 1623.

29

## COUNT 48

87.     Introductory paragraphs 1 through 72 are incorporated herein as though fully set forth in this count.

88.     On or about August 22, 2019, in the Eastern District of North Carolina, CRESHUN ALEXANDRIA GRIFFIN, while under oath and testifying in a proceeding before a Grand Jury of the United States in the Eastern District of North Carolina, did knowingly make a false material declaration concerning her knowledge of CPNs or alternative credit profiles that existed in her name.

89.     At the time and place aforesaid the Grand Jury was conducting, ~~among~~ an investigation of other things, the nature and extent of MICHAEL GRIFFIN's involvement in creating alternate identities for use in credit transactions.   Various documents reflected that alternate identities had been created in the name of CRESHUN GRIFFIN, and that these alternate identities had been used to open credit accounts and otherwise provide proof of credit.   CRESHUN GRIFFIN was shown these and other documents, and asked questions concerning her knowledge of such matters.

90.     At the time and place alleged, CRESHUN GRIFFIN, appearing as a witness under oath at a proceeding before the Grand Jury knowingly made the following declarations in response to questions with respect to the material matter alleged in the preceding paragraph.

91.     After being shown documents reflecting the existence of a Creshun Griffin, allegedly residing at 4712 Matt Drive, Apartment C, in Raleigh, with a SSN

30

ending in *8563, CRESHUN GRIFFIN was asked the following questions and gave the following answers:

> Q: Do you know why there would be a Social Security Number in your name that lists the same address that you previously just testified about?
>
> A: I do not know.
>
> Q: You don't know?
>
> A: No, sir.
>
> Q: Your dad ever talk to you about giving you an alternative credit profile?
>
> A: I don't feel comfortable answering that information. I don't recall.

92. The aforesaid testimony of CRESHUN GRIFFIN, as she then and there well knew and believed, was false, in that CRESHUN GRIFFIN and MICHAEL GRIFFIN communicated concerning the aforementioned alternate identity using CRESHUN GRIFFIN's name, and address, and in that MICHAEL GRIFFIN provided CRESHUN GRIFFIN alternate identities for use in obtaining residential leases.

All in violation of Title 18, United States Code, Section 1623.

31

## COUNT 49

93.  Introductory paragraphs 1 through 72 are incorporated herein as though fully set forth in this count.

94.  On or about August 22, 2019, in the Eastern District of North Carolina, SHARON ANNITA EDMOND, while under oath and testifying in a proceeding before a Grand Jury of the United States in the Eastern District of North Carolina, did knowingly make a false material declaration concerning her use of SSN that did not belong to her.

95.  At the time and place aforesaid the Grand Jury was conducting, among *an investigation of* other things, the nature and extent of MICHAEL GRIFFIN's involvement in creating alternate identities for use in credit transactions, including credit transactions carried out by others. Various documents reflected that alternate identities had been created in the name of SHARON EDMOND, and that these alternate identities had been used to open credit accounts. SHARON EDMOND was shown documents reflecting the existence of these alternate identities using her name and former address, but with an alternate SSN; and asked questions concerning her knowledge of such matters.

96.  At the time and place alleged, SHARON EDMOND, appearing as a witness under oath at a proceeding before the Grand Jury knowingly made certain declarations in response to questions with respect to the material matter alleged in the preceding paragraph. Specifically, SHARON EDMOND was asked the following

32

question and gave the following answer:

> Q:    *Have you ever used someone else's Social Security Number*
> *besides your real Social Security Number?*
>
> A:    *Have I used somebody's---*
>
> Q:    *Yes*
>
> A:    *I don't remember.   Not to my knowledge.*

97.    The aforesaid testimony of SHARON EDMOND, as she then and there well knew and believed, was false, in that MICHAEL GRIFFIN and SHARON EDMOND had previously created an alternate identity consisting of SHARON EDMONDS's name, an address belonging to someone else, a SSN that was not her own, and a date of birth that was not her own.   SHARON EDMOND had further used this alternate identity, and a fake driver's license containing her photograph and a false address, to obtain more than $20,000 from Strategic Funding Partners, doing business as Merchant Cash Group.

All in violation of Title 18, United States Code, Section 1623.

33

## COUNT 50

98.    Introductory paragraphs 1 through 72 are incorporated herein as though fully set forth in this count.

99.    On or about August 22, 2019, in the Eastern District of North Carolina, MELVIN GRIFFIN, while under oath and testifying in a proceeding before a Grand Jury of the United States in the Eastern District of North Carolina, did knowingly make a false material declaration concerning communications with MICHAEL GRIFFIN regarding MICHAEL GRIFFIN's ability to give MELVIN GRIFFIN an alternative credit profile; and concerning whether credit accounts had been opened using an alternative identity MELVIN GRIFFIN.

100.    At the time and place aforesaid the Grand Jury was conducting, among other things, the nature and extent of MICHAEL GRIFFIN's involvement in creating alternate identities for use in credit transactions, including credit transactions carried out by others.   Documents reflected that alternate identities had been created in the name of MELVIN GRIFFIN, and that these alternate identities had been used to open credit accounts.   MELVIN GRIFFIN was shown documents reflecting the existence of an alternate identity using his name, but someone else's address and SSN; and asked questions concerning his knowledge of such matters.

101.    At the time and place alleged, MELVIN GRIFFIN, appearing as a witness under oath at a proceeding before the Grand Jury knowingly made certain declarations in response to questions with respect to the material matter alleged in

34

the preceding paragraph. After being shown a credit report for an alternate identity bearing his name, but a different SSN and address, MELVIN GRIFFIN was asked the following questions and gave the following answers:

> Q: *Do you see where – this Social Security Number on there? It's got your name, but it's a Social Security number ending in 3400.*
>
> A: *uh-huh (yes).*
>
> Q: *Did Mr. Griffin ever tell you he would give you an alternative credit profile, that you could get an alternative credit profile?*
>
> A: *No. I've never spoken to him about anything like that.*
>
> Q: *Do you know why there would be an alternative credit profile with your name?*
>
> A: *Not to my knowledge.*
>
> Q: *Have you ever opened up any credit accounts using a Social Security Number other than your real Social Security Number?*
>
> A: *No.*
>
> Q: *Did you ever give anyone permission to do that in your name?*
>
> A: *No.*

102. The aforesaid testimony of MELVIN GRIFFIN, as he then and there well knew and believed, was false, in that MICHAEL GRIFFIN had previously supplied MELVIN GRIFFIN an alternative identity, consisting of MELVIN GRIFFIN's name, but an alternate date of birth, address, and SSN. MELVIN

35

GRIFFIN further obtained alternate phone numbers for the alternate identity. Additionally, the alternate identity was then used to open multiple credit accounts.

All in violation of Title 18, United States Code, Section 1623.

## FORFEITURE NOTICE

The defendants are hereby given notice that all of the defendants' interests in all property specified herein is subject to forfeiture.

Upon conviction of any of the offenses set forth in Counts One through Three and Counts Twenty-One through Twenty-Eight, the charged defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), as made applicable by Title 18, United States Code, Section 2461(c), any and all property, real or personal, constituting, or derived from, any proceeds the defendant obtained directly or indirectly as a result of the said offenses.

Upon conviction of the any of the offenses set forth in Court Four through Twenty and Count Twenty-Nine, the charged defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), and/or Title 18, United States Code, Section 981(a)(1)(C) (the latter as made applicable by Title 18, United States Code, Section 2461(c)), any and all property, real or personal, constituting, or derived from, any proceeds the defendant obtained directly or indirectly as a result of the said offenses.

The forfeitable property includes, but is not limited to, the gross proceeds of the offenses that were received by each defendant.

36

The forfeitable property includes, but is not limited to the gross proceeds of the offenses that were received by each defendant.

If any of the above-described forfeitable property, as a result of any act or omission of the defendants --

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a

third person;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty --

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) (made applicable by Title 18, United States Code, Sections 982(b)(1) or Title 28, United States Code, Section 2461(c)), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

A TRUE BILL

**REDACTED VERSION**
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

FOREPERSON

DATE: *August 18, 2020*

ROBERT J. HIGDON, JR.
United States Attorney

BY: WILLIAM M. GILMORE
Assistant United States Attorney

37